**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HENRY L. BLEVINS<br>and<br>RYAN REAL ESTATE AND<br>PROPERTY MANAGEMENT, INC.<br><br>Plaintiffs,<br><br>v.<br><br>J. ROBERT KATHERMAN, ESQUIRE<br><br>Defendant. | Civil Action No. 1 : 07 - CV- 633<br><br>JURY TRIAL DEMANDED<br>J. Conner |

FILED
HARRISBURG, PA
APR 03 2007
MARY E. D'ANDREA, CLERK
Per [signature] Deputy Clerk

**COMPLAINT**

Plaintiffs, Henry L. Blevins and Ryan Real Estate and Property Management, Inc., by and through counsel, complain of Defendant J. Robert Katherman, Esquire as follows:

**PARTIES**

1. Plaintiff Henry L. Blevins ("Mr. Blevins") is an individual residing at 4140 Ridge Road, Westminster, Maryland, 21157. Mr. Blevins is the President and owner of Plaintiff Ryan Real Estate and Property Management, Inc.

2. Plaintiff Ryan Real Estate and Property Management, Inc. ("Ryan Real Estate") is a Maryland corporation with its principal place of business located at 4140 Ridge Road, Westminster, Maryland, 21157. Ryan Real Estate is involved in the development of residential properties and the purchase of land in connection with the same.

3. Defendant J. Robert Katherman, Esquire ("Mr. Katherman") is an attorney practicing with Katherman, Heim & Perry, a law firm located at 345 East Market Street, York, Pennsylvania 17403.

4. Upon information and belief, Mr. Katherman resides in the state of Pennsylvania.

**JURISDICTION AND VENUE**

5. This action is one over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because: (a) there is complete diversity of citizenship between the parties; and (b) the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of the interests and costs.

6. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(a) because defendant transacts substantial business in this district, and because many of the acts, transactions, and occurrences alleged herein occurred, at least in part, in this district.

**FACTS**

7. On or about April 1, 2004, Mr. Katherman was retained by Mr. Blevins to represent Ryan Real Estate in obtaining municipal approval for land development plans in West Manchester Township. The retainer agreement between the parties, attached hereto as Exhibit A, was mailed from Mr. Katherman to Ryan Real Estate's Maryland address, where Mr. Blevins accepted its terms on behalf of Ryan Real Estate.

8. The focus of Mr. Katherman's representation was property referred to by the parties as the "Smyser Tract" or "Smyser Tracts", which consisted of two separate tracts of land located on the Smyser Farm in West Manchester Township.

9. The Smyser Tracts property was the subject of an Agreement of Sale between Ryan Real Estate and Margaret Reis and Susan Wible for one million and one hundred thousand dollars ($1,100,000.00), dated August 9, 2002.

10. As of April 1, 2004, the settlement of the Smyser Tracts had not yet taken place, as initially, Mr. Blevins acquired this property on behalf of Ryan Real Estate with an option to buy, upon further investigation of the property's use for residential development. Consequently, when Mr. Katherman was retained by Mr. Blevins, the deed to this property was not yet in Mr. Blevins' name.

11. In April 2004, Mr. Katherman began sending invoices for his work in connection with the parties' April 1, 2004 retainer agreement to Mr. Blevins. Mr. Katherman's invoices, which were mailed on a monthly basis, were addressed to Mr. Blevins at Ryan Real Estate's Maryland address from April 2004 through July 2004.

12. Mr. Blevins made timely payments on each of these invoices.

13. As is reflected in Mr. Katherman's July 2004 invoice, Mr. Katherman assumed, as part of his legal representation of plaintiffs, services in connection with the settlement of the Smyser Tracts. This invoice is attached hereto as Exhibit B.

14. This representation extended beyond the terms expressly set forth in the parties' April 1, 2004 agreement.

15. Mr. Katherman's preparation for settlement of the property continued into August 2004, as is reflected by his invoice, attached hereto as Exhibit C.

16. The August 2004 invoice, for the first time since the parties entered into the retainer agreement, was not sent to Mr. Blevins. Rather, it was mailed directly to Mr. Blevins' business partner, Henry William Seay, Jr. ("Mr. Seay" or "Billy Seay"), who was responsible for securing the financing to purchase the Smyser Tracts property so that the settlement could take place.

17. Consequently, upon information and belief, Mr. Katherman also entered into an agreement to represent Mr. Seay in connection with the settlement of this property as well as the zoning-related issues.

18. Mr. Katherman did not consult Mr. Blevins concerning a potential conflict of interest in his representation of both Mr. Blevins and Mr. Seay.

19. Further, Mr. Katherman's August 2004 invoice reflects the fact that Mr. Katherman conducted seven (7) separate teleconferences with Mr. Seay, often referenced as "extended teleconference with Billy Seay." Exhibit C. In contrast, in August 2004, Mr. Katherman conducted four (4) teleconferences with Mr. Blevins, none of which are described as "extended."

20. Again, Mr. Katherman's September 2004 invoice was addressed only to Mr. Seay. This invoice is attached as Exhibit D.

21. Upon information and belief, Mr. Blevins only later received copies of the August and September 2004 invoices because they were not paid by Mr. Seay and Mr. Katherman wanted payment for his services.

22. The September 2004 invoice also shows two teleconferences with Mr. Seay and none with Mr. Blevins.

23. In connection with his representation of Mr. Blevins and Mr. Seay concerning the settlement of the Smyser Tracts, Mr. Katherman instructed Mr. Blevins to prepare an "Assignment of Agreement for Sale" for Mr. Blevins to sign.

24. The Assignment, attached hereto as Exhibit E, states, "RYAN REAL ESTATE AND PROPERTY MANAGEMENT, INC. hereby assigns all of its right to the Contract of Sale of property known as Woodberry Pointe to Henry William Seay, Jr. for the consideration of the

sum of Eight Hundred Thousand Dollars ($800,000.00). The Contract of Sale is dated ___ of ______ by and between Ryan Real Estate and Property Management, Inc. and Smyser Farm Partnership." Consequently, the Smyser Tracts property was, at this point, referred to by the parties as "Woodberry Pointe" and will hereafter be referred to as the "Woodberry Pointe" property.

25. Mr. Katherman represented to Mr. Blevins that the assignment of Ryan Real Estate's interest to Mr. Seay was to facilitate Mr. Seay's responsibilities in obtaining financing of the Woodberry Pointe property. However, Mr. Katherman represented that, as business partners, both Billy Seay and Mr. Blevins retained an interest in the property. Mr. Katherman led Mr. Blevins to believe that although title would be in Mr. Seay's name, Mr. Blevins' continued interest in the property would enable Mr. Blevins to continue developing the portion of the property that was zoned for residential use and would allow him an ownership interest in the property, which would allow him to receive proceeds from the development and sale of the property as residential homes.

26. Further, the September invoice contained Mr. Katherman's billing entry for conducting the settlement of the property.

27. Again, these services extended beyond those explicitly stated in Mr. Katherman's retainer agreement with Mr. Blevins.

28. Throughout this period, Mr. Katherman repeatedly confirmed that he was acting as Mr. Blevins' attorney, as well as Mr. Seay's attorney.

29. Mr. Blevins did not, at any time, receive any portion of the payment in the amount of $800,000, as set forth in the Assignment.

30. Subsequently, Mr. Blevins and Mr. Seay met with Mr. Robert Hewitt, an investor interested in financing and acquiring an interest in a portion of the Woodberry Pointe property that was zoned for professional use only.

31. Upon information and belief, Mr. Robert Hewitt is a Maryland resident and is the Managing Member of BFR, LLC, a Maryland limited liability company.

32. Thereafter, on or about April 4, 2005, Mr. Seay as Grantor deeded the Woodberry Pointe property to BFR LLC as Grantee. The Deed, for Four Million Nine Hundred Thousand Dollars ($4,900,000.00), is attached hereto as Exhibit F.

33. As is evidenced by the deed, Mr. Katherman was both involved in recording the deed and signed the last page of the deed.

34. Prior to the sale, Mr. Blevins was not informed by Mr. Katherman that the sale was going to include both the portion of the property zoned for professional use and the portion of the property zoned for residential use that Mr. Blevins and Ryan Real Estate were in the process of developing. Mr. Blevins was not informed by Mr. Katherman that, by this sale, Mr. Blevins would be divested of all interest in the property.

35. Subsequent to the sale, Mr. Blevins was not informed by Mr. Katherman that the property, in its entirety, was now owned by Mr. Hewitt and BFR, LLC.

36. Although Mr. Blevins contacted Mr. Katherman's office on May 10, 2005, May 11, 2005, May 12, 2005 and May 16, 2005, in connection with Mr. Blevins' development of the residential portion of the Woodberry Pointe property, which was still in progress, neither Mr. Katherman nor his assistant, Linda L. Shaffer, informed Mr. Blevins that he no longer had any ownership interest in the property.

37. Mr. Katherman's silence in this regard persisted even though he was aware of plaintiffs' continued investments and work in connection with the residential portion of the Woodberry Pointe property into 2006, as is evidenced by his February 13, 2006 letter, attached hereto as Exhibit G.

38. Moreover, Mr. Katherman's legal representation in connection with the Woodberry Pointe property continued into 2006 and Mr. Katherman mailed his monthly invoices to Mr. Blevins at Ryan Real Estate's Maryland address.

39. In or about August 2006, Mr. Blevins independently learned, through persistent investigative calls to Mr. Hewitt, that Mr. Hewitt had in fact purchased the Woodberry Pointe property, including the residential portions of the property.

40. Mr. Katherman did not return Mr. Blevins' repeated calls in this regard.

41. Upon learning this information, Mr. Blevins and Ryan Real Estate had already incurred costs in excess of $200,000 in connection with his development of this property.

42. Furthermore, as a result of Mr. Katherman's misrepresentations, Mr. Blevins and Ryan Real Estate suffered the loss of their anticipated profits for the sale of the residences they were developing.

43. Mr. Blevins has not, at any point, received any portion of the proceeds from the sale of the Woodberry Pointe property.

**COUNT ONE:**

**LEGAL MALPRACTICE/PROFESSIONAL NEGLIGENCE**

44. Plaintiffs incorporate by reference the previous averments as if fully set forth herein.

45. As detailed above, Mr. Katherman entered into an agreement with Mr. Blevins on behalf of Ryan Real Estate on April 1, 2004 to render legal services in connection with the Smyser Tracts/Woodberry Pointe property.

46. As further detailed above, by his own conduct, the scope of Mr. Katherman's representation extended beyond the terms of that agreement to services concerning the settlement of the property and in connection with the Assignment of Agreement of Sale drafted and signed, at Mr. Katherman's direction, by Mr. Blevins.

47. Consequently, Mr. Katherman had a duty to perform professional services for his clients in a competent and ethical manner.

48. Further, pursuant to Pennsylvania Rule of Professional Conduct 1.3, Mr. Katherman had a duty to "act with reasonable diligence" in representing plaintiffs.

49. Pursuant to Pennsylvania Rule of Professional Conduct 1.4, Mr. Katherman had a duty to "keep [plaintiffs] reasonably informed about the status of the matter."

50. Pursuant to Pennsylvania Rule of Professional Conduct 1.7, Mr. Katherman had a duty not to represent Mr. Blevins and Mr. Seay where a concurrent conflict of interest existed.

51. Mr. Katherman acted contrary to his duty as Mr. Blevins'/Ryan Real Estates' attorney in failing to advise Mr. Blevins that his simultaneous representation of Mr. Seay, Mr. Blevins' business partner, could result in a conflict of interest.

52. Mr. Katherman also acted contrary to his duty as Mr. Blevins'/Ryan Real Estates' attorney by failing to inform Mr. Blevins that the Smyser Tracts/Woodberry Pointe property was sold, in its entirety to Mr. Hewitt/BFR, LLC and that as a result, Mr. Blevins no longer retained any ownership interest in the residential portion of the property that he and Ryan Real Estate were developing, especially given that Mr. Katherman performed legal services in connection with Mr. Blevins' continued development of the residential portion of that property into 2006.

53. As a direct and proximate result of the aforesaid negligence and misconduct of Mr. Katherman, plaintiffs suffered damages including but not limited to the over $200,000 in costs incurred by plaintiffs' continued development of the Smyser Tracts/Woodberry Pointe property and the loss of anticipated profits from the sale of these residences.

54. Additionally, Mr. Katherman's conduct concerning the conflict of interest between Mr. Seay and Mr. Blevins, as detailed above, constitutes outrageous conduct.

**WHEREFORE,** plaintiffs pray that the Court enter judgment in favor of plaintiffs and against defendant in excess of $200,000, together with the costs of the action, an award of punitive damages, and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: April 3, 2007

Joseph Fioravanti

Joseph M. Fioravanti, Esquire (ID # 15656)
217 North Monroe Street
P.O. Box 1826
Media, PA 19063
Telephone: (610) 892-7370
*Attorney for Plaintiffs Henry L. Blevins and Ryan Real Estate and Property Management Inc.*