## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRY L. BLEVINS and RYAN REAL ESTATE AND PROPERTY MANAGEMENT, INC., | : CIVIL ACTION NO. 1:07-CV-0633<br>:<br>: (Judge Conner)<br>: |
| Plaintiffs, | : (Magistrate Judge Carlson)<br>: |
| v. | :<br>: |
| J. ROBERT KATHERMAN, ESQUIRE and KATHERMAN, HEIM & PERRY, | :<br>:<br>: |
| Defendants | : |

_____

| | |
|---|---|
| J. ROBERT KATHERMAN, ESQUIRE and KATHERMAN, HEIM & PERRY, | :<br>:<br>; |
| Third-Party Plaintiffs | :<br>: |
| v. | :<br>: |
| HENRY WILLIAM SEAY, JR., | :<br>: |
| Third-Party Defendant | : |

## REPORT AND RECOMMENDATION

### I.    Introduction–Statement of the Case

This is a three-party civil action involving an attorney, J. Robert Katherman, and two erstwhile business partners, Harry Blevins and Henry William "Billy" Seay, partners who were formerly Katherman's clients. This case arises out of allegations of legal malpractice, breach of contract and breach of fiduciary duty brought by one partner, Blevins, against Attorney Katherman in the course of a complex series of real

estate transactions relating to Blevins, Seay, their partnership and various third parties. These real estate transactions led to the rancorous dissolution of the partnership, and spawned lawsuits both in Pennsylvania and in Maryland.

In 2007 this bitter partnership dispute led Blevins to file suit against Attorney Katherman and the other defendants, Katherman's law practice and abstracting company. In his complaint Blevins alleged that Katherman committed legal malpractice, breach of contract and breach of his fiduciary duty as a lawyer when he represented Seay's interests, to the detriment of Blevins individually, in real estate transactions involving a property in which the Blevins-Seay partnership had an interest. For his part, Katherman has denied any wrongdoing, negligence, malpractice, breach of a contract or breach of fiduciary obligations. However, Katherman has moved as a third-party plaintiff to join Blevins' former partner, Seay, as a third- party defendant, on the theory that if Katherman's conduct favored Seay and breached a duty owed to Blevins, then Seay, who benefitted from the conduct and may have induced some of these actions, should be held jointly responsible with Katherman for the harm caused to Blevins.

While this dispute can be simply described in broad legal terms, as a factual matter this case is defined by a series of complex real estate transactions arising out of a loosely constructed "hand shake" real estate partnership. These transactions

spanned several years, entailed countless communications between Blevins, Katherman, Seay and others, and involved a course of increasingly fractious dealings between Blevins and Seay, the estranged partners, and Katherman, the attorney representing the partnership.[1] The precise nature of this course of dealing, which is actively disputed as a factual matter by all parties, presents a cautionary tale for lawyers representing a single entity with multiple and divergent interests. As the interests of these partners diverged, and their acrimony increased, the potential for conflicts, individual client dissatisfaction, and civil liability, grew dramatically for Attorney Katherman.

Against the backdrop of this hotly contested dispute between these two partners, and the attorney who once represented the partnership, this Court is now presented with two motions for summary judgment, both of which attempt to distill these factual disputes into issues which can be resolved as a matter of law. First, Katherman has filed a summary judgment motion which urges the Court to find as a matter of law that no actionable malpractice or breach of fiduciary duty occurred over the two years of Katherman's representation of this increasingly fractured partnership.(Doc. 45.) Katherman advances this claim in the context of competing

---

[1] In a dispute which is emblematic of the nature of the factual disagreements here, it appears that all parties agree that Katherman represented the partnership, but the parties dispute whether Katherman also represented Seay individually. *Compare* Docs. 45 and 50 *with* Doc. 55.

evidentiary submissions containing of hundreds of pages of deposition transcripts, transcripts that the parties concede are replete with contradictory factual assertions.

In addition, Seay has filed a motion for summary judgment which insists that Seay cannot be held liable as a third-party defendant for contribution or indemnity to Katherman even if Katherman is found to have breached responsibilities to Blevins by favoring Seay's personal interests in various real estate transactions. (Doc. 46.) Like the summary judgment motion which Katherman filed as a defendant, this motion seeks a judgment in Seay's favor as a matter of law based upon propositions which typically are regarded as factual matters; namely, Seay's assertion that he never misled either Blevins or Katherman regarding the nature of these real estate transactions. For his part, Katherman, who seeks summary judgment as a defendant in the face of factual disputes, resists summary judgment for Seay as a third-party defendant, insisting that Seay has not shown the absence of any dispute as to material facts.

Our review of these competing motions, along with the voluminous and often contradictory evidentiary materials submitted in support of the motions, leaves us convinced that there are disputed issues of material fact which preclude summary judgment for any party in this case at this time. Therefore we recommend that both summary judgment motions be denied.

## II.    Factual Background to the Summary Judgment Motions

In detailing the factual background of this case, and the competing summary judgment motions, we describe these facts in broad outline only since the facts are both well-known, and in many respects hotly disputed, by the parties making a detailed description of the undisputed facts both unnecessary, and impossible.

There is one clearly undisputed fact in this case: the trail of transactions which led to this lawsuit began with a hand shake deal. On or about 2004, Henry Blevins and Henry William "Billy" Seay entered into a real estate development partnership. Both men concede that this partnership, an informal oral agreement, was essentially a "hand shake" deal between the two men that they would jointly develop real estate projects. (Doc. 48, ¶14.) The informality of this arrangement inevitably contributed to ambiguities and conflicts which would exacerbate and grow over time.

In 2004 one project that the Blevins-Seay partnership was considering for development involved a property referred to by the parties as the "Smyser tract," lands located in rural West Manchester Township. By April 2004, Blevins had executed an agreement of sale to purchase this property but had not yet taken title to this real estate. (Docs. 23, 55, 56 and accompanying exhibits)

On or about April 2004, Blevins approached Attorney Katherman, seeking to retain his services on behalf of the Blevins-Seay partnership in connection with the

development of the Smyser tract. (*Id.*) Katherman agreed to undertake this representation, providing Blevins with a retainer agreement on April 1, 2004. (*Id.*) That agreement was addressed to Blevins, at his business address, Ryan Real Estate, (*Id.* ) and for the first several months of this relationship Blevins received billing statements directly from Katherman, describing the work done on behalf of the partnership. (*Id.*)

From this beginning, it appears that the parties' accounts of events then diverge in many material ways, although the full extent of these factual disputes is not always entirely clear because of the manner in which the parties have elected to proceed with framing these factual issues in their pleadings. The evidentiary submissions tendered by the parties in support of these summary judgment motions are at one time both voluminous and fragmentary. They are voluminous because, including what appear to be duplicate submissions, they encompass more than 1,000 pages of material.[2]

Yet, this sheer volume does not equate to clarity, content or context because many of the submissions tendered by the competing parties consist of short excerpts from far lengthier depositions. This method of presentation has led to a predictable result. Because the individual deposition excerpts are limited, a voluminous but

_____

[2]*See, e.g.*, Doc. 45, 342 pages; Doc. 46, 75 pages; Doc. 47, 13 pages; Doc. 48, 11 pages; Doc. 50, 345 pages; Doc. 53, 60 pages; Doc. 54, 6 pages; Doc. 55, 197 pages; and Doc. 56, 18 pages, for a total of 1,067 pages of material.

fragmentary submission from one party invites the opposing party to submit its own voluminous but fragmentary rejoinder. *Compare* Docs. 45 (342 pages) and 50 (345 pages) *with* Doc. 55 (197 pages). In this piecemeal process essential content and context is lost amidst a sea of competing excerpts.

Despite these limitations, it appears from the competing submissions that the parties are advancing at least three separate factual versions of events. First, from his perspective Blevins recounts a course of conduct spanning from 2004 through 2006 in which he was increasingly isolated by Katherman and Seay from crucial details of various transactions regarding the Smyser tract. (Docs. 23, 55, 56 and accompanying exhibits.) According to Blevins by mid-summer 2004 he no longer received billing statements from Katherman and was not informed of the nature of the work being done on this development. (*Id.*) Blevins further alleges that Katherman then induced him to title the Smyser tract in Seay's name, while misleading him as to the adverse legal effect of this action on Blevins' partnership interests in that property. (*Id.*) Blevins further contends that Katherman and Seay negotiated transactions involving the Smyser tract without his full knowledge and consent, ultimately selling the tract to a third party, without disclosing either the terms of the sale to Blevins, or Blevins' potential partnership interest in the tract to the buyer of the tract. (*Id.*) Blevins also alleges that proceeds from these transactions were not committed to the partnership but rather were retained by Seay, without Blevins' knowledge or consent. (*Id.*)

In contrast, Katherman asserts that he kept the partnership fully apprised of the legal actions he was taking, by informing one or the other of the partners of all the pertinent details of these transactions. (Docs. 31, 45, 48 and 50 and accompanying exhibits.) Katherman adheres to this position while apparently acknowledging making separate arrangements to perform title insurance work for Seay individually in connection with some of these transactions. (Doc. 56, pages 7-9.) Despite allegedly creating a "firewall" to address potential conflicts of interest that might arise between Seay's interests and those of Blevins, (*Id.*) Katherman denies representing conflicting interests. Instead, Katherman seems to attribute the conflicts that are perceived by Blevins solely to a failure of communication between Blevins and Seay, rather than to any actionable failure on his part to identify, address and reconcile conflicting interests within the partnership, and his representation of various partnership interests. (Docs. 45, 48 and 50 and accompanying exhibits.)

In his motion for summary judgment, Katherman also devotes great attention to an incremental process of identifying alleged discrepancies in Blevins' own account of these events. (Doc. 50, pages 9-59 and Exs. A-I.) This effort on Katherman's part, in turn, inspired Blevins to submit a detailed reply, citing countervailing evidence which supports his version of these transactions. (Docs. 55, 56 and accompanying exhibits.) The result of these combined, and competing, submissions is 500 pages of contradictory and mutually inconsistent evidentiary material.

Finally, Seay, the third-party defendant, provides submissions which present yet another version of events. Seay denies misleading either Katherman or Blevins in the course of any of these transactions. (Docs. 47 and 54). In Seay's version of events, all of these transactions were conducted in a transparent fashion with Blevins' full knowledge. (*Id.*)

On the basis of these three competing factual versions of events, we are invited to consider summary judgment motions filed by Katherman and Seay.

### III.   Discussion

#### A.   Rule 56– The Legal Standard.

In this case, the defendant, Katherman, and the third-party defendant, Seay, have both filed motions for summary judgment. Summary judgment is appropriate when: 1) there are no material facts in dispute; and, 2) one party is entitled to judgment as a matter of law. *See Int'l Union, United Mine Workers of Am. v. Rancho Trucking Co.*, 897 F.2d 1248, 1252 (3d Cir. 1990) (citing Fed. R. Civ. Pro. 56). A district court may properly grant a motion for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. *Id.; Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show "that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." *Jalil v. Avdel Corp.,* 873 F.2d 701, 706 (3d Cir. 1989) (quoting *Chippolini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d. Cir. 1987)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. *Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party, however, cannot do so by merely offering

general denials, vague allegations, or conclusory statements; rather, the party must point to specific evidence in the record that creates a genuine issue as to a material fact. *Celotex*, 477 U.S. at 32; *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).

> **B.** **The Parties' Motions for Summary Judgment Raise Factual Issues Which Cannot be Resolved As a Matter of Law.**

At the outset, in their motions Katherman, as defendant, and Seay, as third-party defendant, each urge the Court to find as a matter of law that they bear no liability or legal responsibility to Blevins. In reply, Blevins, as plaintiff, and Katherman, as third-party plaintiff, contest these motions by asserting that there are disputed factual issues which preclude the Court from entering any judgments in favor of either defendant as a matter of law.

We agree that this case presents a host of unresolved factual issues which prevent us from entering a summary judgment for any party. Turning first to Katherman's motion for summary judgment which challenges the legal sufficiency of Blevins' complaint, we note that Blevins has sued Katherman alleging legal malpractice, negligence, breach of contract, and breach of fiduciary duty.(Doc. 23.)

While cast as separate causes of action, the gravamen of Blevins' complaint appears to be that, over time, Katherman, while acting as counsel for the partnership,

began serving the interests of one partner, Seay, to the detriment of the other partner, Blevins, in a series of real estate transactions without full disclosure of the facts surrounding those transactions, or disclosure of the emerging conflicts that were arising in this partnership.

The essential elements of a legal malpractice claim under Pennsylvania law[3] are: 1) the existence of a duty as counsel for a party; 2) a failure by counsel to exercise ordinary skill and care in the discharge of that duty; and, 3) a causal link between the attorney's negligence and damage to the plaintiff. *See, e.g., Rizzo v. Haines*, 555 A.2d 58, 65 (Pa. 1989); *Atkinson v. Haug*, 622 A.2d 983, 986 (Pa. Super. 1993). Legal malpractice claims are brought in a wide variety of factual contexts. However, many such claims have arisen out of allegations that an attorney has negligently represented competing interests in real estate transactions; *Pompei v. Williams*, 731 A.2d 133 (Pa. Super. 1999), or has negligently discharged counsel's duty with respect to representing potentially conflicting interests within a corporation or partnership. *Treasurer v. Ballard, Spahr, Andrews & Ingersoll, LLP*, 866 A.2d 479 (Pa. Commw. Ct. 2005); *Fiorentino v. Rapoport*, 693 A.2d 208 (Pa. Super. 1997). Thus, Pennsylvania case law expressly recognizes that negligence in  transactions like those at issue here can give rise to legal malpractice claims.

---

[3]It is undisputed that Pennsylvania law governs the malpractice claims in this case.

The mere existence of an alleged violation of the canons of ethics does not equate to a successful legal malpractice claim, since the preamble to the Rules of Professional Conduct expressly provides that a "[v]iolation of a Rule should not itself give rise to a cause of action against a lawyer". Rules of Professional Conduct (hereafter RPC) Preamble, ¶19 (June 2009 ed.) However, those ethical canons help inform and define what may constitute negligence in an attorney-client relationship. *See, Rizzo v. Haines*, 555 A.2d 58, 65 (Pa. 1989)(referring to Rules of Professional Conduct in analyzing legal malpractice claim). Many of these canons have potential application to the conduct alleged by Blevins here. For example, under the Rules of Professional Conduct, an attorney has a duty to keep his clients fully informed of material matters relating to his legal representation. Rule of Professional Conduct (hereafter RPC) 1.4 (June 2009 ed.) Counsel also has a particular duty to avoid, and disclose, conflicts that arise among and between current clients. RPC 1.7 and 1.8 (June 2009 ed.) Furthermore, counsel has specific ethical duties to identify, and address, potentially adverse conflicts that arise between various interests and factions within an organization when representing that organization. RPC 1.13(b) (June 2009 ed.)

Fairly construed, Blevins' complaint charges legal malpractice and negligence against Katherman arising out of alleged failures to discharge these basic ethical obligations. Attorney Katherman's motion for summary judgment reveals that Katherman actively contests each and every one of these allegations. However, the

litigation of this motion also discloses a host of disputed, and material, factual questions. These questions relate to the precise nature of Katherman's attorney-client relationship with Seay, Blevins and the Blevins-Seay partnership, with the parties dispute whether Katherman simply represented the partnership or also separately undertook legal work for Seay individually. The competing submissions also disclose material disputes regarding the nature and extent of disclosures by, and between, Katherman, Blevins and Seay throughout the entire course of this relationship, with each party presenting a different view regarding the extent to which essential details fo these business transactions were disclosed to all partners. The materials further show fundamental factual disputes concerning the harms allegedly suffered by Blevins in this case, as well as the timing of Blevins' claims of malpractice against Katherman. All of these disputes turn on factual matters where the positions of the parties conflict in ways that cannot be readily reconciled by the evidence of record without making basic credibility determinations, a task which falls beyond the scope of a summary judgment motion.

Recognizing these fundamental and pervasive factual disputes, Katherman attempts to argue in his summary judgment motion that these very contradictions in the evidence warrant summary judgment as a matter of law. Focusing on alleged contradictions in Blevins' testimony, Katherman reasons that he is entitled to summary judgment because, "where, as here, the testimony or evidence is so contradictory or

conflicting, it would present to the jury no basis for a finding for the party with the burden of proof except a mere guess, [and] the plaintiff cannot meet his burden of proof." (Doc. 50 , page 11) Thus, in the face of what Katherman acknowledges are profound factual conflicts, he invites this Court to find that he is entitled to judgment as a matter of law.

We decline this invitation, which is unsupported in case law,[4] and flies in the face of the legal guidance which defines a motion for summary judgment under Rule 56. Rule 56 provides that summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56;

---

[4]We note that the cases cited by Katherman in his brief do not support this novel proposition that legal certainty emerges out of factual chaos. One of those cases, *DiSalvatore v. United States*, 499 F.Supp. 338 (E.D. Pa. 1980), involves factual findings by a judge at the close of a non-jury trial, and is plainly inapposite. The second principal case relied upon by Katherman, *Widder v. New York C. & St. L. R. Co.*, 142 F.Supp. 830 (W.D. Pa. 1955), entails the denial of post-trial motions in a civil case, and is also readily distinguishable. As for the third case cited by Katherman, *Giddings v. Joseph Coleman Ctr.*, 473 F.Supp.2d 617, 621 (E.D. Pa. 2007), Katherman cites this case for the proposition that Blevins' internal contradictions in testimony compel a summary judgment in the defendant's favor. Thus, Katherman invites us to make a finding that Blevins is incredible as a witness and grant summary judgment on this basis. However, a fair consideration of *Giddings* suggests that its stands for just the opposite proposition, since the Court in *Giddings* flatly states that such contradictions: "go[] to the party's credibility, but this is not for the court to weigh on summary judgment." *Giddings*, 473 F.Supp.2d at 621 n.7.

*White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). A factual dispute is material if it might affect the outcome of the suit under the applicable law, *Anderson,* 477 U.S. at 248, and is genuine if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 249. The evidence presented must be viewed in the light most favorable to the non-moving party. *Id.* The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52. Katherman as the moving party has the initial burden of identifying evidence that shows an absence of a genuine issue of material fact. *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir. 1988).

Despite the length and detail of his submissions, Katherman has not met his burden of proving the absence of material, disputed facts in this case. Thus, while Katherman's brief suggests that the defendant is prepared to actively cross-examine the plaintiff at trial, it does not provide the type of factual clarity which allows for a judgment as a matter of law without trial. The factual issues raised by Katherman go largely to questions of Blevins' credibility, questions which must be resolved as a matter of fact by a jury, and not as a matter law by the Court. Since Blevins' dispute with Katherman is in many essential aspects a fact-bound disagreement, it cannot be resolved through a motion for summary judgment and this summary judgment motion should be denied.

Similarly, the summary judgment motion of the third-party defendant, Seay, also turns on what are essentially questions of fact. Katherman has joined Seay in this action as a third-party defendant on what appears to be a joint tortfeasor-contribution theory of liability, arguing that if Katherman's conduct tortiously favored Seay and breached a duty owed to Blevins, then Seay, who benefitted from the conduct and may have induced some of these actions, should be jointly responsible with Katherman for the harm caused to Blevins. Katherman correctly notes that his joinder of Seay, an alleged joint tortfeasor, as a third-party defendant is expressly allowed by Rule 14 of the Federal Rules of Civil Procedure, and Katherman properly states the controlling standards for joint tortfeasor-contribution liability, which are defined in the following terms:

> Pennsylvania [has] adopted the Uniform Contribution Among Tortfeasors Act ("UCATA"). 42 Pa. Cons.Stat. §§ 8321 *et seq.* UCATA establishes a right to contribution among joint tortfeasors. 42 Pa. Cons.Stat § 8324(a). The term "joint tort-feasor" is defined as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa. Cons.Stat § 8322. "In order to be joint tortfeasors, 'the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury.' " *Foulke v. Dugan,* 212 F.R.D. 265 (E.D.Pa.2002) (quoting *Lasprogata v. Qualls,* 263 Pa.Super. 174, 397 A.2d 803, 806 n. 4 (Pa.Super.Ct.1979); Black's Law Dictionary, 4th Ed. (1968) at 1661). Contribution "is not a recovery for the tort, but rather it is the enforcement of an equitable duty to share liability for the wrong done by both." *Swartz v. Sunderland,* 403 Pa. 222, 169 A.2d 289, 290 (Pa.1961).

*Agere Systems, Inc. v. Advanced Environmental Technology Corp.*, 552 F.Supp.2d 515, 520 (E.D.Pa.2008).

Furthermore, it is also well settled under Pennsylvania law that:

> [t]wo actors are joint tortfeasors [ ] if their conduct "causes a single harm which cannot be apportioned ... even though [the actors] may have acted independently." *Rabatin v. Columbus Lines, Inc.,* 790 F.2d 22, 25 (3d Cir.1986). Pennsylvania also embraces the tort concept of "substantial factor" causation for joint tortfeasors-i.e., that joint tortfeasors may act independently and concurrently to create an enhanced injury. *Harsh v. Petroll,* 584 Pa. 606, 887 A.2d 209 (2005)

*United States v. Sunoco, Inc.*, 501 F.Supp.2d 656, 661 (E.D.Pa.,2007).

Under these legal standards, Blevins, as plaintiff, and Katherman, as third- party plaintiff, have each pleaded facts which could create joint tortfeasor liability for Seay, alleging that Seay participated in concealing facts relating to these real estate transactions from Blevins. Indeed, it appears that Blevins and Seay engaged in separate litigation on precisely these issues in the state of Maryland.

In this regard, Seay's summary judgment motion, which focuses its attention almost exclusively on rebutting a claim that Seay breached some duty that he owed to Attorney Katherman, (Doc. 46) misconstrues the nature of Seay's liability here as a third-party defendant on a contribution, joint tortfeasor theory. Under Pennsylvania law: "[t]he term 'joint tort-feasor' is defined as 'two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not

judgment has been recovered against all or some of them.'." *Sunoco, Inc.*, 501 F.Supp.2d at 661(citing 42 Pa. Cons.Stat § 8322). In order to be joint tortfeasors, Seay and Katherman "must either act together in committing [a] wrong, or their acts, if independent of each other, must unite in causing a single injury. " *Foulke v. Dugan,* 212 F.R.D. 265, 270 (E.D.Pa. 2002) (quoting *Lasprogata v. Qualls,* 263 Pa.Super. 174, 397 A.2d 803, 806 n. 4 (Pa. Super. 1979). Therefore, the focus of our inquiry is not on any alleged breach of duties between Seay and Katherman, but rather on whether as a legal and factual matter Seay and Katherman each breached a duty owed to Blevins in a way which may have resulted in a single injury to Blevins.

Viewed in this light, it seems plain that this third-party complaint states a legally valid cause of action against Seay, a cause of action whose factual merits must be determined at trial. At the outset, we note that Seay, as a partner, and Katherman, as counsel, both owed similar legal fiduciary duties to Blevins. Indeed, under Pennsylvania law the fiduciary responsibilities of partners to one another are clear. As "partners [Blevins and Seay] owe a fiduciary duty one to another." *Clement v. Clement,* 260 A.2d 728, 729 (Pa. 1970). As the Pennsylvania Supreme Court has observed: "One should not have to deal with his partner as though he were the opposite party in an arms-length transaction. One should be allowed to trust his

partner, to expect that he is pursuing a common goal and not working at cross-purposes." *Id.*

In this case, Blevins has alleged, and stands ready to present facts, which could allow a jury to conclude that Seay and Katherman owed similar fiduciary duties to Blevins, and violated those duties in a single unitary course of conduct which deprived Blevins of his share in partnership business opportunities. Therefore, under this view of the facts advanced by Blevins, which involves allegations of multiple, concurrent acts by both Seay and Katherman leading to a single indivisible harm to Blevins, Seay can be held liable as a joint tortfeasor for contribution.

We recognize that Seay and Katherman both deny that their conduct toward Blevins was in any way tortious or violated any fiduciary duty. However, these denials simply define a factual issue to be determined at trial. They do not provide a defense to liability as a matter of law. Therefore, with respect to Katherman's third-party complaint against Seay, that complaint articulates a legally viable cause of action for joint tortfeasor contribution as to which there are material factual disputes. Accordingly, this third-party complaint is not subject to dismissal on a motion for summary judgment.

### III. __Recommendation__

For the foregoing reasons, **IT IS RECOMMENDED** as follows:

1. Defendant Katherman's motion for summary judgment, (Doc. 45) should be **DENIED** since disputed factual issues preclude judgment for the defendant as a matter of law.

2. Third-Party Defendant Seay's motion for summary judgement, (Doc. 46) should also be **DENIED** since disputed factual issues preclude judgment for the third party defendant as a matter of law.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of December 2009.

*S/Martin C. Carlson*
**United States Magistrate Judge**